UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                              Chapter 7

XIANG YONG GAO,                                         Case No. 14-42722-nhl

                                    Debtor.
-------------------------------------------------------------x
GREGORY MESSER, CHAPTER 7 TRUSTEE
THE ESTATE OF XIANG YONG GAO

                                    Plaintiff,              Adv. Pro. No. 14-01149-nhl

            - against -

WEI CHU,

                                    Defendant.
-------------------------------------------------------------x


**DECISION ON SUMMARY JUDGMENT**



Appearances:

Gary Herbst, Esq., &                          Yimin Chen, Esq. &
Nicholas Rigano, Esq.                         Michael Talassazan, Esq.
LaMonica Herbst & Maniscalco, LLP             Law Offices of Chen & Associates
3305 Jerusalem Ave. Ste. 201                  39-15 Main Street, Suite 502
Wantagh, NY 11793                             Flushing, NY 11354
*Attorneys for Plaintiff*                     *Attorneys for Defendant*



NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

Plaintiff Gregory Messer ("Trustee"), Chapter 7 trustee of the estate of Xiang Yong Gao ("Gao" or "Debtor"), brought this adversary proceeding against Wei Chu ("Chu" or "Defendant") to recover two transfers purportedly made by the Debtor to Chu, for no consideration, at a time when the Debtor was a defendant in a state court action in Texas.

On or around May 31, 2012, the Debtor sold a 5% interest he held ("5% Interest") in 136-33 37th Avenue Realty LLC ("37th Avenue Realty LLC") to AE & LY Holdings LLC ("AE & LY") for $870,000 ("Equity Transfer"). The first transfer complained of by the Trustee occurred when $180,000 of the consideration for the Equity Transfer was paid by the purchaser directly to Chu, instead of to the Debtor ("$180,000 Transfer").

The second transfer complained of by the Trustee occurred on September 11, 2012, when the Debtor transferred his interest as a joint tenant with a right of survivorship in a house located at 145-41 Willets Point Boulevard, in Whitestone, New York ("House"), to Chu, making her the sole owner ("Real Estate Transfer") (Collectively, with the $180,000 Transfer, "Transfers").

Before the Court is the Trustee's motion for summary judgment on the following four claims for relief in the second amended complaint.

First, by the fifth claim for relief, the Trustee seeks to recover the Transfers, pursuant to N.Y. Debt. & Cred. Law ("DCL") § 273-a, on the basis that they were made for no consideration while the Debtor was a defendant in an action which resulted in an unpaid judgment.

Next, by the ninth claim for relief, the Trustee seeks to recover the Transfers, pursuant to DCL § 276, on the basis that the Transfers were undertaken with actual fraudulent intent, as opposed to intent presumed in law.

Third, by the tenth claim for relief, on the presumption that the Trustee prevails on his DCL § 276 claim, the Trustee seeks to recover legal fees for bringing this action, pursuant to DCL § 276-a, on the basis that there was the requisite fraudulent intent on the part of the Debtor and the Defendant.

Last, by the nineteenth claim for relief, on the presumption that the Trustee is able to recover the Real Estate Transfer pursuant to DCL § 273-a or § 276, the Trustee seeks the authority, pursuant to Code § 363(h), to sell the House free and clear of the Defendant's remaining one-half interest.[1]

In addition to seeking the above relief on the merits, the Trustee, citing the failure of the Defendant to answer the second amended complaint, seeks to have the same relief granted by default judgment. Mot. for Summ. J. Attach. 1, Mem. of Law ("Mem. of Law"), at 1 n.1, ECF No. 24-1.

For reasons fully explained in this opinion, the relief that the Trustee seeks is granted on the merits, with the exception of the award of legal fees sought pursuant to DCL § 276-a, which is denied.

### Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1), and the Eastern District of New York Standing Order of Reference dated August 28, 1986, as amended by Order dated December 5, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

---

[1] All references to "Code" or "Bankruptcy Code" are to 11 U.S.C. et seq.

## Background

### *The $180,000 Transfer*

In December 2010, the Debtor was named as one of several defendants in an action in the Texas Judicial Court for Harris County ("Texas State Court Action"), which subsequently resulted in a judgment against the Debtor in the amount of $1,917,766.76.[2] Pl.'s R. 7056-1 Stat. of Mat. Fact ("Trustee's R. 7056-1 Stat.") Ex. N, at 11, ECF No. 25-14.[3]

The Equity Transfer occurred on or around May 31, 2012, pursuant to an agreement providing for consideration of $870,000 in exchange for the 5% Interest. Compl. Ex. E., at 2–3, ECF No. 1, Case No. 15-01059-NHL.[4]

The Trustee asserts that prior to the Equity Transfer the Debtor was both the legal and equitable owner of the 5% Interest. Tr. of January 13, 2016 ("1/13 Tr.") 11:6–17, ECF No. 40. This assertion is consistent with the following documentary evidence:

(1) The recitals in the agreement governing the Equity Transfer. Adv. Compl. Ex. E, Membership Interest Transfer Agreement ("Transfer Agreement"), at §§ 1.1, 1.3, 3.3, 3.4, ECF No. 71-5, Case No. 14-42722-NHL.

(2) A 37th Avenue Realty LLC membership certificate which lists the Debtor as the owner of the 5% Interest just prior to the Equity Transfer, and a document signed by the

---

[2] A jury verdict was returned in favor of the plaintiffs in the Texas State Court Action on April 30, 2014. However, the entry of judgment was stayed by the Debtor's bankruptcy filing on May 28, 2014. This Court lifted the automatic stay on October 7, 2015, to allow judgment to be entered, and, in addition, found that this judgment is nondischargeable pursuant to Code § 523(a)(2)(A), (a)(4) and (a)(6). ECF No. 42, Case. No. 14-42722; ECF No.11, Case No. 14-01119-NHL, *aff'd*, 15-cv-03838-FB.

[3] References to "ECF" are to documents filed in this adversary proceeding, identified by docket number, unless a different case number is indicated.

[4] Many relevant documents have been filed in the Debtor's bankruptcy case and other adversary proceedings related thereto. The Court hereby takes judicial notice of the docket in those cases. *See Levine v. Egidi,* No. 93-C-188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993); *In re Koper*, No. 8-13-74213-LAS, 2016 WL 3078957, at *1 n.2 (Bankr. E.D.N.Y. May 23, 2016) (citing *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005); *In re Campbell*, 500 B.R. 56, 59 n.7 (Bankr. D.N.M. 2013) (taking judicial notice of the main bankruptcy case and all adversary proceedings); *In re Saint Vincent's Catholic Med. Ctrs. of N.Y.*, 440 B.R. 587, 599 (Bankr. S.D.N.Y. 2010).

Debtor granting Alan Yao the authority to transfer the 5% Interest. Rep. in Supp. of Pl.'s Mot. Ex. V, 37th Ave. Realty LLC Mem. Cert., ECF No. 35-1; R. 7056-1 Stat. Ex. D to Ex. 5, at 20, ECF No. 9-5, Case No. 15-01059-NHL.

(3) The First Amended and Restated Operating Agreement of 37th Avenue Realty LLC, signed by the Debtor as a 5% owner. R. 7056-1 Stat. Ex. H to Ex. 5, at 47, ECF No. 9-5, Case. No 15-01059-NHL.

(4) Form K-1 from 37th Avenue Realty LLC's tax returns for the years 2006–2012, listing the Debtor as a 5% owner. R. 7056-1 Statement Ex. B to Ex. 5, Form K-1, at 10, ECF No. 9-5, Case. No 15-01059-NHL.

(5) Redacted portions of the Debtor's tax returns for the years 2010–2012, wherein the Debtor lists both interest income and non-passive losses on account of his interest in 37th Avenue Realty LLC. Repl. Mem. in Supp. of Pl.'s Mot. Summ. J. Ex. 6, Debtor's Tax Returns, ECF No. 13-2, Case No. 15-01059-NHL.

(6) The customer copy of a $180,000 check from AE & LY to Chu, which contains a hand-written note describing the $180,000 check as part payment of the $870,000 due the Debtor on account of the transfer of the 5% Interest. R. 7056-1 Stat. Ex. F to Ex. 5, at 31, ECF No. 9-5, Case. No 15-01059-NHL. (Collectively, the "Documentary Evidence.")[5]

Notwithstanding the Documentary Evidence, the Debtor has asserted in related proceedings that he held only legal title to the 5% Interest, and that the beneficial interest belonged to the Debtor's friend, Zhengzhou Chen ("Mr. Chen"). *See* Aff. in Opp. Ex. A, Aff.

---

[5] The assertion that the Debtor was both the legal and equitable owner of the 5% Interest at the time of the Equity Transfer is also supported by two affidavits of Alan Yao, managing member of AE & LY, and treasurer and member of 37th Avenue Realty LLC. Pl.'s R. 7056-1 Stat. Ex. K, Aff. of Alan C. Yao ("2014 Yao Aff."), at 2–4,  ECF No. 25-11; R. 7056-1 Stat. Ex.5, Aff. of Alan Yao ("2015 Yao Aff."), at 1 ¶ 2, ECF No. 9-5, Case No. 15-01059-NHL.

of Xiang Yong Gao ("Debtor's Aff."), at 1–2, ECF No. 81-1, Case No. 14-42722-NHL. The Debtor asserts that Mr. Chen asked him to hold legal title to the 5% Interest on Mr. Chen's behalf because Mr. Chen did not have "legal status." *Id.* The Debtor states "upon information and belief" that Mr. Chen has gone to China and cannot be found. *Id.* at 2.

Chu does not dispute that she received a $180,000 check from AE & LY's managing member, Alan Yao. She also makes no mention, via affidavit or testimony, of Mr. Chen.[6] Trustee's R. 7056-1 Stat. Ex. E., Depo. Of Wei Chu, April 17, 2015 ("Chu Depo."), at 19:3–21:24, ECF No. 25-5; Aff. in Opp. to Pl.'s Mot. for Partial Summ. J. 4 ¶ 11, ECF No. 31. Chu's attorney (who also represents the Debtor) asserts on "information and belief" that:

> Defendant asserts that the actual seller's name is Zhengzhou Chen, but that it was merely under Gao's name. Defendant Wei Chu states that she lent $ 180,000.00 K [sic] to Zhengzhou Chen prior and thus received the check at closing.[7] Checks dated 5/10/10, 8/4/10 and 6/22/11 represent 145,000.00 of the 180,000 lent by the defendant for the 136-33 37th Ave venture.

Aff. in Opp. 4 ¶ 11, ECF No. 31. There is no affidavit or testimony from Chu in the record explaining the significance of these checks.

---

[6] What happened to the remaining $690,000 of the purchase price is disputed. Though in a prior related adversary proceeding the Trustee asserted this money was never paid, the Trustee now asserts it was paid to the Debtor in cash, and the Trustee is seeking to recover this money from the Debtor via a turnover motion in the main case. *See* ECF Nos. 13, 16, Adv. Pro. No. 15-01052-NHL; Turnover Mot., ECF No. 79, Case No. 14-42722-NHL. Alan Yao claims that the $690,000 was paid to the Debtor in cash. 2014 Yao Aff., ECF No. 25-11; 2015 Yao Aff., ECF No. 9-5, Case No 15-01059-NHL. The Debtor asserts, "[a]t the closing to sell the 5% share [i.e. the 5% Interest], I merely signed the documents for Mr. Chen, and, Mr. Chen took possession of proceeds [sic] including any cash which was tendered." Debtor's Aff. 1, ECF No. 81-1, Case. No. 14-42722-NHL.  Nowhere in the record before the Court does Chu take a position on whether, or to whom, the $690,000 in cash was paid, and it is not necessary to make any determination regarding this $690,000 in order to rule on the instant motion.

[7] This statement appears to imply that Chu personally attended the closing, which is inconsistent with other parts of the record. However, for purposes of deciding the instant motion, whether Chu attended the closing in person or received the $180,000 check via the Debtor is immaterial. (footnote added).

The Trustee believes that Mr. Chen is an invention of the Debtor. Rep. Aff. of Nicholas C. Rigano, Esq. in Supp. of Trustee's Mot. to Compel Turnover 2 ¶ 3, ECF No. 83, Case No. 14-42722-NHL.[8]

*The Real Estate Transfer*

On September 11, 2012, the Debtor transferred to Chu his interest in a joint tenancy with right of survivorship in the House, making her the owner in fee simple. Aff. in Opp. Ex. A, at 6–19, ECF No. 31; Chu Depo. 8:3–10, ECF No. 25-5.

The Debtor and Chu purchased the House in 1999, and lived there together from that point until at least May 28, 2014, the date the Debtor filed his chapter 7 petition ("Petition Date"). Chu Depo. 6:6–25, 7:4–24, ECF Doc. No. 25-5; Trustee's R. 7056-1 Stat. 8 ¶¶ 50–53, ECF No. 25; *see* Petition 1, ECF No. 1, Case No. 14-42722-NHL.[9] The Debtor and Chu are co-obligors on a home mortgage line of credit against the House entered into with Chase in April 2007 ("Home Mortgage Line of Credit"). Trustee's R. 7056-1 Stat. Ex. G, at 4, ECF No. 25-7. In addition, the Debtor and Chu have two children together and have shared a bank account since 2010. Chu Depo. 6:11–18, ECF No. 25-5; Trustee's R. 7056-1 Stat. Ex. P, at 2–3, ECF No. 25-16.

Consideration for the Real Estate Transfer is listed as $520,000 in the Real Property Transfer Report. Aff. in Opp. Ex. A, Real Prop. Transf. Rep., at 15, ECF No. 31. The Debtor

---

[8] Attorney Kevin Tung, who states he has represented 37th Avenue Realty LLC since 2006, and at whose office the closing of the transfer of the 5% Interest was held, has stated by affirmation that he does not remember if he attended the closing and has no knowledge of who was there. Kevin Tung, Esq. Aff. ¶1, ECF No. 15, Case No. 15-01059-NHL. Alan Yao never mentions Mr. Chen either. 2014 Yao Aff., ECF No. 25-11; 2015 Yao Aff., ECF No. 9-5, Case No. 15-01059-NHL.

[9] Chu stated during her deposition that the Debtor moved out of the House in 2012. Chu Deposition 16:21–24, ECF No. 25-5. However, the Court deems admitted the fact that the Debtor lived in the House through the Petition Date. This fact appears in the Trustee's unchallenged Rule 7056-1 statement, and is consistent with the Debtor's listing the House as his address on his bankruptcy petition. R. 7056-1 Stat. ¶¶ 51–53, ECF No. 25; Petition, ECF No. 1, Case No. 14-42722-NHL.

lists half this amount, $260,000, as the consideration he received for the Real Estate Transfer in his statement of financial affairs ("SOFA"). SOFA 43, ECF No. 1, Case. No. 14-42722-NHL. However, Chu concedes that this money was not actually paid. Chu Depo. 8:3–10:19, ECF No. 25-5. Instead, Chu asserts that the Real Estate Transfer was made as repayment of a $270,000 loan she made to the Debtor in February 2008. *Id.* As evidence of this loan, Chu points to a $270,000 check payable from her to L&L Supermarket ("L&L"), dated February 23, 2008 ("$270,000 Transfer"). Chu Depo. 10:20–14:18, ECF No. 25-5; Trustee's R. 7056-1 Stat. Ex. J, ECF 25-10.[10] The Debtor held an interest in L&L between October 2007 and December 2011. SOFA 46–47, ECF No. 1, Case No. 14-42722-NHL. Chu asserts that the $270,000 Transfer was undertaken at the Debtor's request and represents an investment by the Debtor in L&L. Chu Depo. 10:20–11:21, 14:1–25, ECF No. 25-5.

The Trustee disputes that the $270,000 Transfer was consideration for the Real Estate, and points out that there is no documentary evidence showing that the $270,000 Transfer was a loan from Chu to the Debtor. Transfer, Mem. of Law 9–10, ECF No. 24-1. Furthermore, the Trustee asserts that the source of the funds for the $270,000 Transfer was the Home Mortgage Line of Credit for which the Debtor and Chu were jointly and severally liable. *Id.* Thus, the Trustee argues that Chu is, in effect, trying to establish that the Debtor paid "consideration to himself." 1/13 Tr. 9:18–24, ECF No. 40.

### Procedural Background

The Trustee asserts that because the Defendant has not answered the second amended complaint, the Trustee is entitled to a default judgment. Mem. of Law 1 n.1, ECF No. 24-1. In addition, the Trustee asserts that because the Defendant has not responded to the Trustee's

---

[10] Though the check is difficult to read, the parties have stipulated that it is for $270,000, payable from Chu to L&L. Chu Depo. 10: 20–11:17, ECF No. 25-5.

Rule 7056-1 Statement, all the material facts therein are deemed admitted. 1/13 Tr. 14:11–16,

ECF No. 40; *see* Trustee's R. 7056-1 Stat., ECF No. 25. *See generally* Local Bankruptcy Rule

7056-1. Likewise, because the Defendant never responded to the Trustee's requests for

admission, the Trustee asserts that all the requests for admission are deemed admitted as well.

Mem. of Law 23–24, ECF No. 24-1; *see* Trustee's R. 7056-1 Stat. Ex. Q, Plaintiff's First Req.

for Adm. on Def. Wei Chu, ECF No. 25-17.

  The facts that the Trustee seeks to have deemed admitted are non-controversial and are

supported by ample documentary evidence. To the limited extent that the Court relies on the

Defendant's lack of response in order to deem a fact admitted it is so indicated.

  The Trustee also argues that the Court should not consider any evidence submitted by

the Defendant in opposition to this Motion because of her refusal to meet discovery

obligations. Mem. of Law 22–23, ECF No. 24-1. However, because consideration of the

limited evidence that has been presented in response to the Motion does not alter the Court's

determination and allows for a more robust holding on the merits, that evidence is considered

in the analysis that follows.

**Legal Standard**

  Under Federal Rule of Civil Procedure 56, made applicable to this proceeding by Rule

7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must

determine "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." *Kulak v. City

of New York*, 88 F.3d 63, 70–71 (2d Cir. 1996) (quoting *Anderson v. Liberty Lobby Inc.*, 477

U.S. 242, 251–52 (1986)). In ruling on a motion for summary judgment, the court looks to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," *Celotex,* 477 U.S. at 322, and reviews the evidence in the light most favorable to the non-moving party, with all inferences drawn in favor of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

While the initial burden is on the movant to demonstrate the absence of a genuine dispute of material fact with particular cites to the record, *Celotex*, 477 U.S. at 323; *Marvel*, 310 F.3d at 286, the non-moving party cannot defeat summary judgment by merely casting doubt on some of these facts. *Kulak*, 88 F.3d at 71. The non-moving party must point to disputed facts whose determination would affect the outcome of the case, and show sufficient evidence with respect to these facts, such that a reasonable trier of fact could find in favor of the non-moving party. *Anderson*, 477 U.S. at 247–48; *Matsushita*, 475 U.S. at 586–87.

Thus, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines,* 593 F.3d 159, 166 (2d Cir. 2010). The disputed issues of fact "must be backed by evidence." *Denker v. Uhry*, 820 F. Supp. 722, 729 (S.D.N.Y. 1992), *aff'd*, 996 F.2d 301 (2nd Cir. 1993).

### Discussion

The law is clear that self-serving affidavits and statements, standing alone, are insufficient to defeat summary judgment. *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996); *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (finding insufficient a "bald assertion, completely unsupported by evidence," that a father who was the

record owner of property was not also the beneficial owner at the time he transferred it to his sons); *Wojcik v. Brandiss*, 973 F. Supp. 2d 195, 213 (E.D.N.Y. 2013).

The Debtor's affidavit aside, the affirmation of Chu's attorney is the only evidence indicating that Mr. Chen was the equitable owner of the 5% Interest. Aff. in Opp. 4 ¶ 11, ECF No. 31. However, when opposing summary judgment "an affidavit of the opposing party's attorney which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight." *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir. 1983); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). There is therefore no basis on which the Court could accept as true that Mr. Chen was the equitable owner of the 5% Interest.

Consequently, the following analysis presumes that the Debtor was both the legal and equitable owner of the 5% Interest at the time of the Equity Transfer.

### 1.  Fifth Claim for Relief: Constructive Fraud

The Trustee seeks to use the power conferred by Code § 544(b)(1)[11] to avoid the Transfers pursuant to DCL § 273-a. Thereafter, the Trustee seeks to recover the Transfers from the Defendant pursuant to Code § 550.[12]

---

[11] Code § 544(b)(1) provides, in relevant part: "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title . . . ." 11 U.S.C. § 544(b)(1).

[12] Code § 550(a)(1) provides, in relevant part:

> [e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under section 544 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—the initial transferee of such transfer or the entity for whose benefit such transfer was made.

DCL § 273-a, provides that:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

DCL § 273-a.

The Second Circuit Court of Appeals has explained that, in order to prevail on a claim under DCL § 273-a, a plaintiff must establish that: (1) the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment. *Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006).

It is undisputed that prongs (2) and (3) from *Grace* are satisfied. Therefore, the sole question with regard to the Trustee's DCL § 273-a claim is whether the Transfers were undertaken for "fair consideration."

Fair consideration is defined in DCL § 272, which provides:

> Fair consideration is given for property, or obligation.
> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
> b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

---

§ 550(a)(1).

DCL § 272. Accordingly, fair consideration is given when three criteria are met: (1) in exchange for the debtor's property, the recipient either conveys property or discharges an antecedent debt; (2) the debtor receives the "fair equivalent" of the property conveyed; and (3) the exchange is undertaken in good faith. *In re Sharp Int'l Corp.*, 403 F.3d 43, 53–54 (2d Cir. 2005) (quoting *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058–59 (2d Cir. 1995)). Generally, a creditor asserting a fraudulent conveyance claim is responsible for establishing a lack of fair consideration so defined. *See United States v. McCombs*, 30 F.3d 310, 324 (2d Cir. 1994); *Neshewat v. Salem*, 365 F. Supp. 2d 508, 520 (S.D.N.Y. 2005), *aff'd*, 194 F. App'x 24 (2d Cir 2006). Each of the transfers will be considered independently with respect to the first two requirements of § 727, followed by a combined analysis of the "good faith" requirement.

### The Real Estate Transfer

The Trustee has sufficiently demonstrated that the first two criteria are necessarily absent with respect to the Real Estate Transfer, as there is no basis from which the Court might infer that the transfer was made for consideration. Chu asserts that consideration for the Real Estate Transfer was antecedent debt created by the $270,000 Transfer. Chu Depo. 13:16–25, 11:18–25, ECF No. 25-5. Chu describes the $270,000 Transfer as a no interest loan made by her to the Debtor in 2008, pursuant to an unwritten agreement that "he will have to pay it back within two years. If not, he will have to put the house up." *Id.* However, the Trustee notes that the check Chu has provided to demonstrate the existence of this "loan" is not payable to the Debtor, but rather to L&L. Trustee's R. 7056-1 Stat. Ex. J, ECF No. 25-10. While the Debtor did list an interest in L&L on his SOFA, there is no documentary evidence tending to show that these two transactions, separated by over four and a half years in time, are in any way

related—and therefore no basis to infer that they were.[13] SOFA 46–47, ECF No. 1, Case No. 14-42722.

This conclusion is further supported by the fact that the funds used to make the $270,000 Transfer were obtained by drawing down on the Home Mortgage Line of Credit, for which the Debtor and Chu were jointly and severally liable. To the extent that this is true, the Debtor has obtained nothing from Chu, making it difficult to see how the $270,000 Transfer could reasonably be construed as consideration flowing between them. Mem. of Law 23–24, ECF No. 24-1; Trustee's R. 7056-1 Stat. Ex. G, Credit Line Mortgage, at 6 ¶ 11, 13, ECF No. 25-7.

Accordingly, there is nothing to test against the equivalent value prong, as, regardless of whether the $270,000 approximates the value of the Debtor's interest, the $270,000 Transfer was not consideration in the first instance.

### The $180,000 Transfer

The $180,000 Transfer was a diversion to Chu of part of the consideration due the Debtor on account of the Equity Transfer. As was noted above, no explanation for the $180,000 Transfer has been articulated by Chu herself, and no weight will be given to her lawyer's affirmation—which is not based on personal knowledge—in opposition to the Trustee's motion on this issue. *See Crescenzi*, 923 F.2d at 21

Therefore, with regard to the $180,000 Transfer, the Defendant's defense to the Trustee's DCL § 273-a claim is based exclusively on three checks payable from the Defendant to 37th Avenue Realty LLC, from 2010 and 2011, totaling $145,000 ("$145,000 Checks").

---

[13] The $270,000 Transfer was by check dated February 23, 2008; the Real Estate Transfer took place on September 11, 2012.

An inference that the $145,000 Checks represent a capital contribution by the Debtor to 37th Avenue Realty LLC (and are therefore consideration flowing from Chu to the Debtor) may appear plausible, but it is directly contradicted by Chu's testimony and the documentary record. Chu stated in her deposition that she is not aware of any reason that the Debtor would have transferred her $180,000, Chu Depo. 19:16–19, ECF No. 25-5, which is to say that even she was not aware of any consideration furnished. Furthermore, the first two checks were written in 2010 for a total of $45,000, but Schedule K-1 from 37th Avenue LLC's 2010 tax return shows a capital contribution from the Debtor during 2010 of only $1,663. Adv. Case. No. 15-01059 R. 7056-1 Stat. Ex. B to Ex 5, ECF No. 9-5, Case No. 15-01059-NHL.

Accordingly, there is no evidence that the $180,000 Transfer was made on account of antecedent debt, and no permissible inference that either of § 272's first two criteria have been satisfied. *See Joslin v. Lopez*, 765 N.Y.S.2d 895, 897 (App. Div. 2d Dep't 2003) ("[W]hile an antecedent debt may provide fair consideration . . . the evidence presented was insufficient to establish the existence of an antecedent debt.").

*Good Faith*

Because neither of the first two elements of § 272 have been satisfied on the facts presented, the issue of good faith has no impact on the outcome of the instant fair consideration analysis. Yet, it cannot be ignored that a lack of good faith may serve as an independent ground to set aside a conveyance. *See In re Palermo*, No. 08-CV-7421(RPP), 2011 WL 3874866, at *13 (S.D.N.Y. Sept. 2, 2011) ("[W]here there is a fair exchange of value to satisfy an antecedent debt, [a] conveyance may be set aside if good faith is lacking." (quoting *In re Dr. J. Herbert Fill,* 82 B.R. 200, 216 (Bankr. S.D.N.Y. 1987))), *aff'd*, 549 F. App'x 38 (2d Cir.

2014). It is therefore worth briefly considering good faith, even though the Court otherwise finds no genuine issue with respect to whether the two transfers constituted a fair exchange.

It is true that "[g]ood faith is an elusive concept in New York's constructive fraud statute," because it "is hard to locate that concept in a statute in which 'the issue of intent is irrelevant.'" *Sharp Int'l*, 403 F.3d at 54 (citing *McCombs,* 30 F.3d 310, 326 n.1). However, when seeking to set aside a conveyance for an absence of good faith, a plaintiff in New York is often required to prove that a transferee lacked at least one of the following: "(1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others." *S. Indus. v. Jeremias*, 411 N.Y.S.2d 945, 949 (App. Div. 2d Dep't 1978); *see also Ostashko v. Ostashko*, 00-CV-7162 (ARR), 2002 WL 32068357, at *23 (E.D.N.Y. Dec. 12, 2002); *In re Rego Crescent Corp.*, 23 B.R. 958, 969 (Bankr. E.D.N.Y. 1982). Under this standard, an intent to defraud is sufficient to establish bad faith, but it is by no means necessary. *See Jeremias*, 411 N.Y.S.2d at 949. Indeed, a showing that a conveyance was made in bad faith may be predicated on a "transferee's knowledge of a transferor's unfavorable financial condition at the time of the transfer," such that the transferee would be placed on notice of any issues inherent in the transaction. *Ostashko*, 2002 WL 32068357, at *23 (quoting *In re Checkmate Stereo & Elecs., Ltd.*, 9 B.R. 585, 671 (Bankr. E.D.N.Y. 1981)).

Here, the Trustee has presented sufficient evidence to meet this standard. Though he has failed to demonstrate an intent to defraud on Chu's part,[14] the record is indicative of her knowledge of the Debtor's precarious financial position. *See, e.g.*, Chu Depo. 8, ECF No. 25-5. Moreover, the Defendant has produced nothing to rebut this showing, and has thereby failed to

---

[14] For further discussion on this point, see Part 3, *infra*.

suggest the presence of a question suitable for a jury on this issue. Consequently, even if the Trustee failed to demonstrate that the Transfers were not made on account of antecedent debt, he would nonetheless be entitled to summary judgment on his DCL § 273-a claim on these grounds.

Furthermore, the Trustee is entitled to recover the property subject to the Transfers from Chu, as the initial transferee of the property, pursuant to Code § 550(a)(1).

### 2. Ninth Claim for Relief: Actual Fraud

In addition to seeking to recover the Transfers on the basis that they were constructively fraudulent, the Trustee moves for summary judgment on his claim to recover the Transfers, pursuant to Code § 544(b)(1) and DCL § 276, on the basis that they were undertaken with actual intent to hinder, delay, or defraud creditors. DCL § 276 provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

DCL § 276.

Thus, "[t]o prevail in an action under Section 276, the plaintiff must establish that (1) the thing disposed of must be of value, out of which the creditor could have realized a portion of his claim; (2) it must be transferred or disposed of by the debtor; and (3) it must be done with intent to defraud." *In re Montclair Homes*, 200 B.R. 84, 96 (Bankr. E.D.N.Y. 1996) (citing *Hoyt v. Godfrey*, 88 N.Y. 669 (1882)); *In re Kovler*, 249 B.R. 238, 243 (Bankr. S.D.N.Y. 2000), *supplemented*, 253 B.R. 592 (Bankr. S.D.N.Y. 2000), *and corrected*, 329 B.R. 17 (Bankr. S.D.N.Y. 2005).

"[T]o prove actual fraud under § 276, a creditor must show intent to defraud on the part of the transferor." *Sharp Int'l*, 403 F.3d at 56 (quoting *Frank*, 61 F.3d at 1059 n.5). [15] The burden of proving actual intent is on the party seeking to set aside the conveyance, by clear and convincing evidence. *McCombs*, 30 F.3d at 328.

In this case, the first two prongs articulated by *Montclair Homes* are satisfied because the Transfers were transfers of the Debtor's valuable property. Therefore, the Court is left to determine whether the Debtor possessed fraudulent intent within the meaning of DCL § 276, despite the fact that "[o]rdinarily, the issue of fraudulent intent cannot be resolved on a motion for summary judgment," because it is "a factual question involving the parties' states of mind." *Golden Budha Corp. v. Canadian Land Co. of America, N.V.*, 931 F.2d 196, 201–02 (2d Cir. 1991).

In light of this difficulty, and because fraudulent intent is rarely susceptible to direct proof, courts look to badges of fraud in order to determine if actual fraud has taken place. *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983). As has often been recited:

> Because "[f]raudulent acts are as varied as the fish in the sea," any list of the badges of fraud would be non-exhaustive. However, six telling badges of fraud are:
> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;

---

[15] Some courts have held that in order to prevail under DCL § 276, fraudulent intent on the part of the transferee must be proved as well. However, the more sensible reading of the statute is that only fraudulent intent on the part of the transferor is required and that the transferee's intent is only relevant with regard to a good faith defense. *Schneider v. Barnard*, 508 B.R. 533, 546 (E.D.N.Y. 2014) (noting that DCL § 276-a explicitly puts the transferee's intent at issue, and therefore, as a matter of statutory construction, its absence from DCL § 276 indicates that only the transferor's intent is at issue in that provision); *In re Dreier LLP*, 452 B.R. 391, 428–35 (Bankr. S.D.N.Y. 2011).

> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of the events and transactions under inquiry.

*In re Hypnotic Taxi LLC*, 543 B.R. 365, 374 (Bankr. E.D.N.Y. 2016) (internal citation omitted) (citing *In re Kaiser*, 722 F.2d 1574, 1582–83 (2d Cir.1983); *In re Boyer*, 328 F. App'x 711, 715 n.2 (2d Cir. 2009)).

"The existence of a badge of fraud is merely circumstantial evidence and does not constitute conclusive proof of actual intent. However, the existence of several badges of fraud can constitute the requisite clear and convincing evidence of actual intent [to defraud]." *In re Actrade Fin. Techs., Ltd.*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005) (citing 4 Collier on Bankruptcy, ¶ 548.03(2) (15th ed. 1983)); *see also In re Singh*, 434 B.R. 298, 311–12 (Bankr. E.D.N.Y. 2010) (quoting *Actrade*, 337 B.R. at 809).

In this case, virtually all of the badges of fraud are present:

(1) *The lack or inadequacy of consideration*: That facts strongly suggest that no consideration was provided for the Transfers, as discussed above.

(2) *The family, friendship or close associate relationship between the parties*: The Debtor and Chu lived to together, for at least 12 years, in a house they owned jointly; they share a bank account; and they have two children together. Though Chu claims that they are merely "friends," Chu Depo. 6, ECF No. 25-5, these facts indicate far closer ties.

(3) *The retention of possession, benefit or use of the property in question*:

    a. *The $180,000 Transfer*: It is not known whether the Debtor retained possession, benefit, or use of the $180,000 after the $180,000 Transfer. Despite the fact that the $180,000 went to Chu, the Debtor's apparent long-time girlfriend and the

mother of his children, this badge cannot be established conclusively because inferences are taken in favor of the non-movant on summary judgment.

b. *The Real Estate Transfer*: The opposite is true with respect to this transfer. The Debtor used the address of the House as his street address when filing his Chapter 7 petition on May 28, 2014, over a year and a half after the Real Estate Transfer, and it is admitted that he lived in the House through that date. Trustee's R. 7056-1 Stat. 8 ¶¶ 50–53, ECF No. 25.

(4) *The financial condition of the party sought to be charged both before and after the transaction in question*: The Debtor's precise financial condition before and after the date of the Transfers cannot be surmised with granular particularity. However, when the Debtor filed his chapter 7 petition on May 28, 2014, he listed no real property, and personal property valued at $57,078. Petition 1–3, 16–19, ECF No. 1, Case No. 14-42722-NHL. Without the 5% Interest and the Debtor's interest in the House, the Debtor had only nominal assets left to satisfy the $1,917,766.76 judgment entered against him in the Texas State Court Action. Thus, the Debtor appears to have endeavored to render himself "judgment proof" by divesting himself of any assets on which a judgment creditor could collect.

(5) *The existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and* (6) *The general chronology of the events and transactions under inquiry*: To summarize the course of events disclosed in the record, the Debtor became a defendant in a multimillion dollar lawsuit, and subsequently transferred virtually all of his wealth to his children's mother, for no consideration.

In light of the above, all but one of the badges—whether the Debtor continued to benefit from the $180,000—are present in this case. Though the Court takes all inferences against the Trustee, the foregoing analysis indicates, by clear and convincing evidence, that the Transfers were undertaken by the Debtor with actual fraudulent intent. *See, e.g.*, *Singh*, 434 B.R. at 311–12.

Consequently, the Trustee is entitled to summary judgment on his DCL § 276 claim.

### 3. Tenth Claim for Relief: Attorneys' Fees Pursuant to DCL § 276-a.

The Trustee seeks to recover attorneys' fees pursuant to DCL § 276-a. "Section 276-a states that attorneys' fees should be awarded when a conveyance 'is found to have been made by the debtor *and received by the transferee with actual intent,* as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors.'" *Crescenzi*, 923 F.2d at 21; *see also Cadle Co. v. Newhouse*, 20 F. App'x 69, 74–75 (2d Cir. 2001); *In re Janitorial Close-Out City Corp.*, No. 09-72982-AST, 2013 WL 492375, at *13–*16 (Bankr. E.D.N.Y. Feb. 8, 2013); *Key Bank of N.Y. v. Diamond*, 611 N.Y.S.2d 382, 384 (App. Div. 4th Dep't 1994) (emphasizing that a finding on the transferee's intent is required under § 276-a).[16]

---

[16] The full text of 276-a reads:

> In an action or special proceeding brought by a creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, in which action or special proceeding the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall recover judgment, the justice or surrogate presiding at the trial shall fix the reasonable attorney's fees of the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors in such action or special proceeding, and the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall have judgment therefor against the debtor and the transferee who are defendants in addition to the other relief granted by the judgment. The fee so fixed shall be without prejudice to any agreement, express or implied, between the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors and his attorney with respect to the compensation of such attorney.

In *Carey v. Crescenzi*, the Second Circuit reversed the grant of summary judgment on a DCL § 276-a claim, finding that the facts therein did not conclusively establish the transferees' intent, despite being sufficient to establish the transferor's. There, a father's transfer of property to his sons for no consideration did not permit the court to determine whether the sons, in accepting the free property, possessed a fraudulent intent, or merely believed that they were receiving a gift. *Crescenzi*, 923 F.2d at 21. This open question prevented an award of attorney's fees. *Id.* As the *Crescenzi* court explained, "§ 276-a attorney's fees may not be awarded against a defendant, who is a grantee of a fraudulent conveyance, without a specific finding that he was aware of and participated in the actual fraud." *Id.* at 20.; *accord Newhouse*, 20 F. App'x at 74–75 (reversing summary judgment on a DCL § 276-a fee award despite concurring with the district court's badges of fraud analysis which indicated that a husband's transfer of funds to his wife's account was actually fraudulent because no specific findings demonstrating the wife's fraudulent intent had been made); *In re Hickey*, 168 B.R. 840, 843–46 (Bankr. W.D.N.Y. 1994) (holding that a finding of actual fraudulent intent on the part of a husband who transferred the majority of his net worth to his wife, for no consideration, at a time when he was being pursued by creditors, was insufficient to support an award of attorneys' fees against the wife under DCL § 276-a because the Trustee had not met his burden of showing that the transfers were received by the wife with fraudulent intent).

As was the case in *Crescenzi*, here the facts presented by the Trustee do not sufficiently establish the requisite party's intent for an award of attorney's fees. While the Debtor's fraudulent intent has been established by clear and convincing evidence on the basis of a badges of fraud analysis, the Trustee cannot prevail on his DCL § 276-a claim without

---

DCL § 276-a.

showing that *Chu* "was aware of and participated in the actual fraud." *Crescenzi*, 923 F.2d at 20. Taking all inferences in Chu's favor, as the non-movant defending a summary judgment motion, the Trustee has not succeeded in making this showing.

In support of his DCL § 276-a claim, the Trustee points to a badges of fraud analysis which is substantially similar to the badges of fraud analysis undertaken above. Mem. of Law, 14–15, 17, ECF No. 24-1. The only specific assertion that the Trustee makes with regard to his DCL § 276-a claim, which he did not make when establishing the Debtor's fraudulent intent under DCL § 276, is that Chu had knowledge of the transfers because she: (1) signed the deed as part of effectuating the Real Estate Transfer; and (2) deposited the $180,000 she received pursuant to the $180,000 Transfer into her bank account. Mem. of Law, 17, ECF No. 24-1. However, the Defendant's knowledge of receipt of the Transfers does not establish that she received them with fraudulent intent.

Accordingly, summary judgment on the Trustee's DCL § 276-a claim is denied.

### 4. Nineteenth Claim for Relief: Authority to Sell the House Free and Clear of the Defendant's Interest

Once the Trustee recovers the Real Estate Transfer, the Trustee and the Defendant will own the House as joint tenants. By the nineteenth claim for relief the Trustee seeks the authority, pursuant to Code § 363(h), to sell the House free and clear of the Defendant's interest.

Code § 363(h) provides:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if–
(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light or power.

11 U.S.C. § 363(h).

In this case, Code § 363(h)(1) is satisfied because the House is residential real property, making partition in kind impracticable. *See In re Beck*, No. 8-10-09052-478, 2011 WL 3902820, at *8 (Bankr. E.D.N.Y. Sept. 6, 2011). Likewise, Code § 363(h)(2) is satisfied because the economic reality is that a sale of the estate's interest in a joint tenancy with Chu would realize significantly fewer proceeds for the bankruptcy estate than a sale free and clear of Chu's interest. *See id.* Code § 362(h)(4) is satisfied because this property is not used for any of the activities described therein. Consequently, the only part of Code § 363(h) which requires more than cursory analysis is subsection (3).

Code § 363(h)(3) requires a balancing of the benefit to the estate of a sale free and clear of the co-owners interest against the detriment such a sale would cause the co-owner to suffer. *Id.* at *8–*9. "It is axiomatic that the Trustee must at the outset establish that the proposed sale does in fact create a benefit to the estate." *In re DeVanzo*, No. 8-08-75665-REG, 2010 WL 1780038, at *2 (Bankr. E.D.N.Y. May 3, 2010). Such benefit may be established through proof that the estate's portion of the net proceeds of the sale will exceed existing liens on the Debtor's interest in the property. *Id.* at *4. Once it is established that a sale will benefit the bankruptcy estate, the burden would shift to the Defendant to demonstrate the detriment that would befall her upon the sale of her interest in the property. *Id.* Both economic and non-economic detriment must be considered. *In re Persky*, 893 F.2d 15, 21 (2d Cir. 1989).

If it is established that the sale of the Defendant's interest would result in some detriment to her, the burden shifts back to the Trustee to show that the benefit to the estate is greater than the detriment shown. *DeVanzo*, 2010 WL 1780038, at *10. "Ultimately, the Court's decision to allow a § 363(h) sale is an equitable judgment that is discretionary and fact driven." *Id.* at *13 (citing *In re Sturman,* 222 B.R. 694, 709 (Bankr. S.D.N.Y. 1998)).

In this case, the benefit to the Debtor's bankruptcy estate is clear as there is a large amount of equity in the House which will only be available to satisfy the Debtor's creditors if a Code § 363(h) sale takes place. Trustee's R. 7056-1 Stat. 10 ¶68, ECF No. 25; Trustee's R. 7056-1 Stat. Ex. Q, Requests for Admission, at 6 ¶12–15, ECF No. 25-17.

In opposition, Chu argues only that she is the rightful owner of 100% of the House and that therefore there is "no authority to force a sale." Aff. in Opp. 3, ECF No. 31. However, this argument is inapposite because it has already been determined the Trustee is entitled to recover the Real Estate Transfer. Consequently, the Trustee has established that a sale of the House free and clear of Chu's interest will benefit the Debtor's bankruptcy estate, while Chu has not made any countervailing showing.

Nevertheless, possible detriment to Chu will be considered. Assuming the House is currently worth $850,000, and is encumbered by a mortgage of no more than $80,000, Chu will receive approximately $385,000 from the sale of the house, less broker's fees. Trustee's R. 7056-1 Stat. Ex. F, Appraisal Report, at 15, ECF No. 25-6 (valuing the House as of June 10, 2015, at $850,000); Trustee's R. 7056-1 Stat. 10 ¶ 71, ECF 25 (asserting that the House is encumbered by liens amounting to no more than $80,000).

Under *Persky*, it is also necessary to consider non-economic detriment. 893 F.2d at 21. Chu has two school aged children who may be forced to move if the House is sold to a third

party. However, the presence of minor children, standing alone, is not sufficient to outweigh the benefit to the bankruptcy estate. *See DeVanzo*, 2010 WL 1780038, at *21–*25. Furthermore, it has been admitted that the Defendant is the sole owner of a five bedroom house, located less than 10 miles from the House, at 4559 Zion Street in Little Neck, New York ("Zion Street House"). Trustee's R. 7056-1 Stat. 10 ¶¶ 74–75, ECF No. 25. It is admitted that the Defendant has equity of at least $300,000 in the Zion Street House. *Id.* at 10–11 ¶77. In addition, it is admitted that the Defendant's assets exceed her liabilities by at least $500,000. *Id.* at 10 ¶ 73. Taking all of these factors into consideration, the sale of Chu's interest would effect a greater benefit to the estate than it would a detriment to Chu.

Accordingly, pursuant to Code § 363(h), that portion of the Trustee's Motion which seeks the authority to sell the House free and clear of the Defendant's interest is granted.

## Conclusion

For the foregoing reasons, with regard to the fifth claim for relief in the second amended complaint, to avoid the Transfers pursuant to Code § 544(b)(1), DCL § 273-a, and Code § 550, the Trustee's Motion is granted; with regard to the ninth claim for relief in the second amended complaint, seeking to avoid the Transfers pursuant to Code § 544(b)(1), DCL § 276, and Code § 550, the Trustee's Motion is granted; with regard to the tenth claim for relief in the second amended complaint, seeking to recover attorneys' fees pursuant to DCL § 276-a, the Trustee's Motion is denied; with regard to the nineteenth claim for relief in the second amended complaint, seeking the authority pursuant to Code § 363(h) to sell the House free and clear of the Defendant's interest, the Trustee's Motion is granted.

A separate order will issue.



Dated: September 30, 2016
     Brooklyn, New York

**Nancy Hershey Lord**
**United States Bankruptcy Judge**